IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS JAMES BOSSONS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS MCGINLEY, ET AL. | : | NO.  19-3563 |

## MEMORANDUM

**Padova, J.**                                                           **February 4, 2022**

Before the Court is Nicholas James Bossons's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  On April 6, 2020, United States Magistrate Judge Timothy R. Rice filed a Report and Recommendation recommending that we deny the Petition in its entirety.  Bossons has filed Objections to the Report and Recommendation.  For the reasons that follow, we overrule the Objections, adopt the Report and Recommendations, and deny the Petition with prejudice.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On January 11, 2014, Bossons was arrested and charged with four counts of attempted murder, aggravated assault, robbery, possessing an instrument of crime, and resisting arrest.  Commonwealth v. Bossons, MJ-03210-CR-0000017-2014, Crim. Dkt. at 3.  On July 2, 2014, Bossons pled guilty to two counts of aggravated assault and one count of robbery in accordance with one of two alternative plea offers and, during his plea colloquy, admitted that he used a knife to cut the victim, struck a police officer, threatened serious bodily injury in the course of committing the robbery, and committed serious bodily injury in the course of committing the robbery.  (N.T. 7/2/2014 at 19-22.)  He was informed during the plea colloquy that the standard sentencing range was 90 to 108 months of imprisonment as a minimum for the first count of aggravated assault, 60 to 72 months imprisonment as a minimum for the second count of aggravated assault, and 102 to 120 months imprisonment as a minimum for the robbery count.  (Id.

at 4-5.)    Accordingly, he faced a minimum sentence of 25 years in prison at the top end of the standard sentencing range for all three counts.  (Id. at 5.)   On September 26, 2014, Bossons withdrew his guilty plea and told the state court that he wished to have a jury trial.  (N.T. 9/26/2014 at 2-4.)  On October 17, 2014, the trial court held a hearing during which Bossons was presented with a new guilty plea offer from the Commonwealth.  The Commonwealth offered to dismiss the remaining charges against Bossons if he pled guilty to two counts of aggravated assault, which would result in a negotiated sentence of 13 to 26 years of imprisonment.  (N.T. 10/17/14 at 2-3.)  Bossons rejected the plea offer after confirming that his sentence would be 13 to 26 years of imprisonment if he pled guilty.  (Id. at 5-8.)  His trial commenced on December 1, 2014. (N.T. 10/17/2014 at 2-8; N.T. 12/1/2014 (Jury Selection).)

The evidence admitted at Bossons's trial showed that on the evening of January 10, 2014, Bossons was drinking at a bar in Bethlehem, Pennsylvania, with another patron, Jeffrey Janos. (N.T. 12/3/2014 at 5-14.)  After leaving the bar around 1:00 a.m. the next morning, Janos  invited Bossons to walk home with him for another beer.  (Id. at 14-15.)  At Janos's home, Bossons pulled out a knife and demanded Janos's money, phones, and videogame console.  (Id. at 17-19.)  Bossons knocked Janos to the ground, stabbed him in the shoulder and leg, kicked him repeatedly, beat him for about ten minutes, and stole his videogame console. (Id. at 20-25, 27.)   Neighbors called 911 after Janos crawled to the front door and cried for help. (N.T. 12/1/2014 at 19-20.)  Janos suffered a fractured skull and stab wounds in his back and lower leg, he was hospitalized for two weeks, had more than one hundred staples and stitches, and underwent seven surgeries as a result of the stab wound in his leg, which had cut an artery. (N.T. 12/3/2014 at 27-28.)  At trial, Janos identified photographs of his injuries which were admitted into evidence.  (Id. at 28-32.)

On the same night, police officers responding to a domestic dispute call at a nearby apartment noticed "a fair amount of blood on the stoop of the apartment and . . . blood on the front door to that apartment." (N.T. 12/2/2014 at 56-57.)  The officers knocked on the apartment door, which was opened by a woman who gave them permission to enter the apartment. (N.T. 12/2/2014 at 57-58.)  Once inside the apartment, the officers noticed more blood on the floor.  (Id. at 58.) Bossons was in the apartment's kitchen.  (Id. at 59-60.)  Bossons smelled of alcohol and had blood on his right hand.  (Id. at 69, 73.)  The officers asked Bossons for identification, and Bossons responded that he did not have any identification with him.  (Id. at 60.)  Bossons then stood up and fought with the police officers.  (Id. at 62-63.)  Bossons elbowed one of the officers in the face, splitting his lip.  (Id. at 63.)  After the officers subdued Bossons and put him in handcuffs, Bossons informed the officers that he was on Lehigh County work release and there might be a warrant for his arrest.  (Id. at 64-65.)  One of the officers searched Bossons and found a folding pocket knife in his front pocket.  (Id. at 65.)  The officers took Bossons to the Bethlehem Police Department. (Id. at 74.)

Detective Moses Miller of the City of Bethlehem Police Department received a call at approximately 1:45 a.m. that there was a male stabbing victim at St. Luke's hospital who had been stabbed multiple times.  (N.T. 12/3/14 at 158-59.)  Detective Moses went to the hospital, where he spoke to the victim.  (Id. at 159.)  The victim told Detective Miller that he had been at the Good Times Bar with a man named Nick who stabbed him at the victim's house.  (Id.)  Detective Miller then received a call from a patrol sergeant, who told him that he had a male identified as Nicholas Bossons in custody and that Bossons had blood on his hands and clothing and also had a folding knife.  (Id. at 160.)  The sergeant thought that, because Bossons had been a block from the victim's

home, he might be a suspect in the stabbing.  (Id.)  Detective Miller was later notified that Bossons was at police headquarters.  (Id. at 164-65.)

After Bossons arrived at the police department, his clothing was taken for evidentiary purposes and blood was found on his sweatshirt and jeans.  (Id. at 165.)  Detective Miller then read Bossons his Miranda rights, after which Bossons agreed to talk to him.  (Id. at 166.)  Bossons gave multiple versions of the night's events. (Id. at 168-70.)  Bossons eventually admitted meeting Janos at a bar and later stabbing him during a fight at Janos's home.  (Id. at 170.)  A video recording of this interview was played for the jury.  (Id. at 173-248.)

On December 4, 2014, the jury convicted Bossons of attempted murder, two charges of aggravated assault, robbery, possessing an instrument of crime, and resisting arrest.  (N.T. 12/4/2014 at 121-24.)  On February 20, 2015, he was sentenced to a total of 30-to-60 years of imprisonment. (N.T. 2/20/2015 at 42.)  On March 13, 2017, the Superior Court affirmed Bossons's conviction and sentence.  Commonwealth v. Bossons, 168 A.3d 307 (Pa. Super. Ct. 2017).

On August 21, 2017, Bossons filed a petition for relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. §§ 9541-46 ("PCRA").   In his PCRA petition, Bossons raised eight claims of ineffective assistance of counsel:  (1)  ineffective assistance of counsel for failing to investigate and prepare; (2) ineffective assistance of counsel for failing to advise Bossons of the existence of a plea offer;  (3) ineffective assistance of counsel for failing to file a motion to suppress Bossons's confession; (4) ineffective assistance of counsel for failing to present a claim of self-defense;  (5) ineffective assistance of counsel for failing to impeach the victim based on his inconsistent prior testimony; (6) ineffective assistance of counsel for failing to challenge a biased juror for cause;  (7) ineffective assistance of counsel for preventing Bossons from testifying; and (8) ineffective assistance of counsel for failing to object to the introduction of

4

inflammatory pictures into evidence at trial. (See 8/21/17 PCRA Pet. at 4, PCRA Mem. at 2-5.)
On November 8, 2017, Bossons' PCRA counsel asked the court to withdraw the August 2017
PCRA petition without prejudice to re-file within the applicable PCRA time limit. (N.T. 11/8/2017
at 2.)  Counsel explained that Bossons wanted to "refine" his petition, but had not been able to file
an amended petition because his legal papers had been lost during a recent prison transfer. (Id.)
The Commonwealth did not object to Bossons's request to withdraw the PCRA petition without
prejudice.  (Id.)  The court colloquied Bossons, who confirmed that he understood he would have
to re-file within the PCRA time limit, which would expire "roughly sometime [in] March, latest
April 2018." (Id. at 3-4.)  Bossons filed his new PCRA petition on February 15, 2018, raising the
same issues he had raised in his August 2017 PCRA petition.

On September 4, 2018, following an evidentiary hearing during which Bossons and his
trial counsel testified, the PCRA court denied Bossons's PCRA claims on their merits.
Commonwealth v. Bossons, CP-48-CR-794-2014, slip op. (Northampton Cty. Com. Pl. Sept. 4,
2018) ("PCRA Ct. Op.").  In 2019, the Superior Court affirmed, finding that Bossons's claims
were waived because he had raised the same claims in his first, dismissed, PCRA petition and also
denying his claims on the merits.  Commonwealth v. Bossons, No. 2767 EDA 2018, slip op. at 5
(Pa. Super. Ct. Mar. 8, 2019) ("PCRA App. Op.").

Bossons filed in the instant habeas petition on August 6, 2019.  He raises five claims for
relief:  (1) his trial counsel was ineffective in failing to move to suppress his January 11, 2014
statement to detectives; (2) his trial counsel was ineffective in failing to object to the admission of
photographs of Janos's injuries into evidence at trial; (3) his trial counsel was ineffective in failing
to advise him of a plea offer; (4) his trial counsel was ineffective in failing to pursue a claim of
self-defense and in advising Bossons not to testify; and (5) his trial counsel was ineffective in

failing to challenge juror number 21 for cause during voir dire.  Magistrate Judge Timothy R. Rice recommends that we deny all of Bossons's claims on the merits.[1]  Bossons has filed Objections to all of Magistrate Judge Rice's recommendations with respect to his claims for relief.

## II.    STANDARD OF REVIEW

Where a habeas petition has been referred to a magistrate judge for a report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  [The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The state habeas statute, 28 U.S.C. § 2254, provides that the "district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "The petitioner carries the burden of proof."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citation omitted).

Pursuant to § 2254, a petition for writ of habeas corpus may be granted only if (1) the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an

---

[1] The Commonwealth opposes the Petition on the ground that the Superior Court's conclusion that Bossons's claims had been waived results in the procedural default of Bossons's claims and is an "independent and adequate" state law basis for the denial of the instant Petition. Magistrate Judge Rice rejected the Commonwealth's argument on the ground that Bossons had made strong arguments that interference from the prison, the trial court, and/or advice from his PCRA counsel related to the dismissal without prejudice of Bossons's first PCRA petition constitutes "cause" to excuse Bossons's procedural default, and he therefore considered Bossons's claims on the merits.  (R&R at 6 n.2.)  Neither party has objected to Judge Rice's determination that Bossons's procedural default should be excused.  After careful and independent consideration of this issue, we conclude that Magistrate Judge Rice was correct and that any procedural default is excused.  Accordingly, we consider the merits of Bossons's claims and his objections to the Report and Recommendation.

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)-(2).   In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court explained the two components of § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u> at 412-13. In order to determine whether a state court's application of federal law is "'unreasonable,'" a court must apply an objective standard, such that the relevant application "may be incorrect but still not unreasonable."   <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir. 2001) (quoting <u>Williams v. Taylor</u>, 529 U.S. at 409-10).   The test is whether the state court decision "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."   <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 890 (3d Cir. 1999) (*en banc*). With respect to § 2254(d)(2), "'[f]actual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.'"   <u>Dellavecchia v. Sec'y Pa. Dep't of Corrs.</u>, 819 F.3d 682, 692 (3d Cir. 2016) (alteration in original) (quoting <u>Werts v. Vaughn</u>, 228 F.3d 178, 196 (3d Cir. 2000)).

## III.   DISCUSSION

All of Bossons's claims assert that his trial counsel was ineffective.  A claim for ineffective assistance of counsel is grounded in the Sixth Amendment right to counsel, which exists "'in order to protect the fundamental right to a fair trial.'"   <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 368 (1993)

(quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)) (additional citations omitted).  In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that (1) his attorney's performance was deficient, i.e., that the performance was unreasonable under prevailing professional standards, and (2) that he was prejudiced by his attorney's performance.  Strickland, 466 U.S. at 687-88, 691-92.  An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Id. at 688.  Prejudice is proven if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.  "We may address the prejudice prong first '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.'" United States v. Travillion, 759 F.3d 281, 289 (3d Cir. 2014) (alteration in original) (quoting Strickland, 466 U.S. at 697).  Counsel cannot be found to be ineffective for failing to pursue a meritless claim.  See United States v. Bui, 795 F.3d 363, 366-67 (3d Cir. 2015) ("'[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'" (quoting United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999))).

A.   Bossons's Statement to the Police

Bossons claims that his trial counsel was ineffective for failing to move to suppress his videotaped statement to police, which was shown to the jury during his trial, on the grounds that he made that statement at 3:30 a.m. on January 11, 2014, after being questioned by police for approximately two hours; he was "highly intoxicated;" he had taken Klonopin on January 10, 2014, and he had not slept for approximately eighteen hours.  (Pet. ¶ 12.)  Magistrate Judge Rice recommends that we deny the Petition with respect to this claim because it is meritless.  (R&R at 7.)  Bossons objects to this recommendation, so we review it de novo.  See 28 U.S.C. § 636(b)(1).

Bossons claims that his statement was not knowing and voluntary because, at the time he made it, he was intoxicated and had not slept for eighteen hours. He asserts that his blood alcohol content at the time of his arrest was .201 and that his speech was slurred and unintelligible when he made his statement. Bossons argues that his trial counsel should have moved to suppress his statement because intoxication may be considered in determining whether a confession is involuntary. Bossons relies on Commonwealth v. Culberson, 358 A.2d 416, 417 (Pa. 1976) (stating that "'intoxication is a factor to be considered, but it is not sufficient, in and of itself to render the confession involuntary.' The test is whether there was sufficient mental capacity for the defendant to know what he was saying and to have voluntarily intended to say it." (quoting Commonwealth v. Jones, 322 A.2d 119, 125 (1974)) (citing Commonwealth v. Smith, 291 A.2d 103, 105 (1972))).

The PCRA court denied this claim on state law grounds, noting that it was required to "assess the voluntariness of [the] confession based on the totality of circumstances, which includes assessing the defendant's physical state." PCRA Ct. Op. at 10 (citation omitted). The PCRA court considered Bossons's testimony from his PCRA hearing, in which he stated that he slept for approximately nine hours on the night prior to [his arrest and interrogation;]" he took a Klonopin on the morning of January 10, 2014 due to his anxiety and took another around 3:00 or 4:00 that afternoon. Id. at 11 (citations omitted). Bossons also testified during the PCRA hearing that he spent between 90 minutes and two hours at the Good Times Bar on January 10, 2014, during which he drank "several beers and several shots of liquor," though he did not consume any additional alcohol after he left the bar around 1:00 a.m. Id. (quotation omitted). The PCRA Court noted that Bossons was given soda and cigarettes at the police station after his arrest at 2:00 a.m. on January 11, 2014 and his interrogation by Detective Miller began at 3:20 a.m. and lasted about one hour

and fourteen minutes.  Id. at 12 (citations omitted).  The PCRA court also considered the trial

testimony of the arresting officers, who stated that "while Bossons smelled of alcohol, the odor

was not strong" and that Bossons did not act as though he was extremely intoxicated, and he was

able to speak with them intelligibly.  Id. (citations omitted).  The PCRA court concluded that

"[n]either Bossons's lack of sleep nor intoxication is sufficient to make the statement involuntary"

and noted that, under state law, "[w]hile being awake for eighteen hours may be a long time, that

alone is insufficient to invalidate a statement as being made involuntarily" and that "Bossons's

intoxication does not make his statement involuntary" since "[t]he interviewing police officers

testified that Bossons did not act extremely intoxicated and that he was able to converse intelligibly

during the interview."  Id. at 13 (citations omitted).  The PCRA court further concluded that trial

counsel was not ineffective because, under these circumstances, the statement would have been

found to be voluntarily made and admissible at trial if trial counsel had filed a motion to suppress.

Id.  The Superior Court concluded on appeal that Bossons was not entitled to PCRA relief because

"his statement was voluntary under the circumstances."  PCRA App. Op. at 5 n.8.

The introduction into evidence of an involuntary confession violates the due process clause

of the Fourteenth Amendment.  See Schneckloth v. Bustamonte, 412 U.S. 218, 223 (1973)

("Almost 40 years ago, in Brown v. Mississippi, 297 U.S. 278, the Court held that a criminal

conviction based upon a confession obtained by brutality and violence was constitutionally invalid

under the Due Process Clause of the Fourteenth Amendment.").  The Supreme Court has instructed

that, in determining whether a confession was voluntary, we examine "the totality of all the

surrounding circumstances—both the characteristics of the accused and the details of the

interrogation."  Id. at 226.  We may consider "the youth of the accused, . . . his lack of education,

. . . or his low intelligence, . . . the lack of any advice to the accused of his constitutional rights, . .

. the length of detention, . . . the repeated and prolonged nature of the questioning, . . . and the use of physical punishment such as the deprivation of food or sleep." Id. (citations omitted).

The PCRA Court and the Superior Court applied this standard to Bossons's claim that his trial counsel was ineffective for failing to move to suppress his confession on the grounds that it was made when he was intoxicated and had not slept in eighteen hours.  We conclude that the PCRA and Superior Courts' "application of the voluntariness standard to the facts of this particular case was . . . reasonable" and that the "state courts' analysis was thorough and attentive to the relevant evidence and the factors bearing on voluntariness." Reardon v. Hendricks, 82 F. App'x 273, 276 (3d Cir. 2003); see also Fahy v. Horn, 516 F.3d 169, 196 (3d Cir. 2008) (citations omitted) (noting that the Pennsylvania Supreme Court's standard for determining whether a confession is voluntary articulates the proper standard for such an analysis).  We thus conclude that the state courts' adjudication of this claim did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" and that their decisions were not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, we overrule Bossons's objection to Magistrate Judge Rice's Report and Recommendation that we deny this claim.

  B.  Photographs of the Victim

Bossons claims that his trial counsel was ineffective for failing to object to the admission of photographs of Janos's injuries into evidence at trial because those photographs were misleading and prejudicial.  Magistrate Judge Rice recommends that we deny the Petition with respect to this claim because it is meritless.  (R&R at 8.)  Bossons objects to this recommendation, so we review it de novo. See 28 U.S.C. § 636(b)(1).

Bossons contends that the photographs showed "the victim's injuries after treatment and surgeries where they appeared open and grotesque and made the injuries appear worse." (Bossons's Br. at 5.)  Bossons maintains that his trial counsel should have objected to the admission of these photographs pursuant to Pennsylvania Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Pa. R. Evid. 403.  Bossons maintains that the Commonwealth introduced the photographs at trial solely for shock value, in order to mislead the jury into thinking that Janos's wounds were more serious than they actually were.

The PCRA court denied this claim on state law grounds, noting that, under Pennsylvania law there is a two-step analysis for determining the admissibility of photographs.  "In determining whether to admit a photograph or videotape of a . . . victim, a trial court must engage in a two-step analysis."  Commonwealth v. Patterson, 91 A.3d 55, 67 (Pa. 2014), abrogated on other grounds by Commonwealth v. Yale, 249 A.3d 1001 (Pa. 2021) (citing Commonwealth v. Pruitt, 951 A.2d 307, 319 (Pa. 2008)).  "First, the court must determine whether the photograph is inflammatory. If it is not, the photograph may be admitted if it has relevance and can assist the jury's understanding of the facts."  Id.  "If the photograph is inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury."  Id. (citing Pruitt, 951 A.2d at 319).  The PCRA court noted that the photographs "show Janos's wounds following treatment at the hospital" and found "that the photographs were relevant to establish the nature of Bossons's attack on Janos."  PCRA Ct. Op. at 15 (citing Pa. R. Evid. 401).  The PCRA court specified that "the photographs were relevant to show the injuries Janos sustained due to Bossons's attack, and to establish that Janos

suffered serious bodily injury, which is relevant to the charges of aggravated assault and attempted murder." Id. (citing Pa. R. Evid. 401).  The PCRA court further found that "the photographs of Janos's cleaned wounds, following treatment at the hospital, were [not] so gruesome as to inflame the jury." Id. (citation omitted).  The PCRA court also noted that Bossons's trial counsel did make a motion in limine at trial to exclude some of the photographs "due to the danger of unfair prejudice" and that this motion was denied.  Id. (citation omitted).  The PCRA court further noted that it gave limiting instructions to the jury with respect to these photographs at the close of trial. Id. at 16 (citing N.T. 12/4/14 at 77).  The PCRA court concluded that "the photographs were relevant and not inflammatory" and that Bossons's trial counsel "had a reasonable basis for his failure to object to the admission of the photographs at trial," including the trial court's previous statement of "its inclination to admit the photographs in denying his oral motion *in limine*." Id. The Superior Court concluded on appeal that Bossons was not entitled to PCRA relief as to this claim because "the photographs were not more prejudicial than probative."  PCRA App. Op. at 5 n.8.

"The Supreme Court has made it clear in Spencer v. Texas, 385 U.S. 554 (1967), that the states have a broad area of choice regarding the rules of evidence they will apply in their criminal proceedings." U.S. ex rel. Mertz v. State of N.J., 423 F.2d 537, 540 (3d Cir. 1970).  "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)).  Bossons does not argue that the state courts' conclusions that the photographs were admissible under state law was contrary to or an unreasonable application of clearly established federal law.  Rather, he argues that his trial counsel's failure to object at trial to their admission was ineffective.  However, Bossons's trial

attorney did move in limine at trial to exclude the photographs, which motion was denied, and the trial court gave a limiting instruction regarding the photographs.

We conclude that  that Bossons has not shown that his trial counsel's failure to object to the admission of these photographs was unreasonable under these circumstances and he has not shown that he was prejudiced by his attorney's failure to object.  See Strickland, 466 U.S. at 687-88, 691-92.  Accordingly, we overrule Bossons's objection to Magistrate Judge Rice's Report and Recommendation that we deny this claim.

C.     The Plea Offer

Bossons argues that his trial counsel was ineffective for failing to inform him that the Commonwealth's final guilty plea offer included a binding 13-26 year sentence, unlike the plea offer to which he had pled guilty on July 2, 2014, which was an open plea with no recommended sentence.  Magistrate Judge Rice recommends that we deny the Petition with respect to this claim because it is meritless.  (R&R at 10.)  Bossons objects to this recommendation, so we review it de novo.  See 28 U.S.C. § 636(b)(1).

Bossons asserts that, on October 17, 2014, while he was in court, he was informed that the Commonwealth had made a plea offer for a plea to attempted murder and assault, with a suggested sentence of 15 to 30 years of imprisonment.  Bossons also contends that the Commonwealth made an alternate offer that he plea to "two counts of aggravated assault for a sentence of 13 to 26 years which apparently was never conveyed to this Petitioner."  (Bossons's Br. at 6-7.)  Bossons maintains that he rejected both of these offers because he was not told that the sentence was binding and he believed that the sentences "were merely recommendations to the Court."  (Id. at 7.)  Bossons asserts that he "rejected the plea of 13 to 26 years because it was relayed to him by counsel that the judge was not bound by these terms.  Thereby in Petitioner's mind he was again pleading

open, the very thing he was attempting to avoid." (<u>Id.</u> at 8.)  Bossons argues that his trial counsel's failure to inform him that the sentence was binding on the court was ineffective assistance of counsel pursuant to the Supreme Court's decisions in <u>Missouri v. Frye</u>, 566 U.S. 134 (2012).  The Supreme Court held, in <u>Frye</u>, that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Frye</u>, 566 U.S. at 145.  Therefore, "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." <u>Id.</u> at 147; <u>see also</u> <u>Lafler v. Cooper</u>, 566 U.S. 156, 166 (2012) ("Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence.").

The PCRA found that this claim lacked merit based on the record of Bossons's rejections of the Commonwealth's plea offers in this case.  PCRA Ct. Op. at 17-19.  The PCRA Court stated that the Commonwealth made three separate plea offers to Bossons.  <u>Id.</u> at 17.  "The first offer permitted Bossons to plead to two counts of aggravated assault and one count of robbery."  <u>Id.</u> (citation omitted).  This offer did not include a sentencing agreement.  <u>Id.</u> (citation omitted).  "The Commonwealth subsequently presented a second offer pursuant to which Bossons would plead guilty to one count each of attempted homicide and aggravated assault."  <u>Id.</u> (citation omitted).  This offer also did not include a sentencing agreement.  <u>Id.</u> (citation omitted).  Finally, "the Commonwealth made a third offer to Bossons, pursuant to which he would plead guilty to two counts of aggravated assault.  The third offer included a sentencing agreement whereby Bossons would be sentenced to a minimum period of thirteen years to a maximum period of twenty-six

years." Id. (citations omitted).  The PCRA court also noted that Bossons accepted the first plea

offer on July 2, 2014, during a hearing in which he was also informed of the second plea offer.  Id.

at 18 (citing N.T. 7/2/14 at 2-5, 19-20).  The PCRA Court also recounted that the parties discussed

the third plea offer on the record during the October 17, 2014 hearing.  Id. at 19 (citing N.T.

10/17/14 at 5).   Based on this history, the PCRA Court concluded that "Bossons has failed to

establish the ineffectiveness of counsel."  Id.   The Superior Count concluded on appeal that

Bossons's was not entitled to PCRA relief as to this claim because "Appellant was aware of the .

. . plea offer and knowingly rejected that offer."  Super. Ct. Op. at 5 n.8.

Based upon the record before us, we find that Bossons was informed of the

Commonwealth's third plea offer and that he was also informed that the plea offer included a

negotiated sentence of 13-26 years imprisonment.  (See N.T. 10/17/14 at 5-8.)  Accordingly, we

conclude that Bossons's trial counsel was not ineffective for failing to inform Bossons of this plea

offer and that, even if Bossons was informed of the specifics of the offer in open court, rather than

in a separate conversation with his attorney, he was not prejudiced, because he was made aware of

the offer.  See Strickland, 466 U.S. at 687-88, 691-92.  Accordingly, we overrule the objection to

Magistrate Judge Rice's Report and Recommendation that we deny this claim.

D.     The Self-Defense Claim

Bossons argues that his trial counsel was ineffective for failing to raise a self-defense claim

at trial and for advising Bossons not to testify in his own defense at his trial.  Magistrate Judge

Rice recommends that we deny the Petition with respect to this claim because it is meritless.  (R&R

at 11.)  Bossons objects to this recommendation, so we review it de novo.  See 28 U.S.C. §

636(b)(1).

Bossons relies on <u>Commonwealth. v. Torres</u>, 766 A.2d 342 (Pa. 2001), in which the Pennsylvania Supreme Court explained that, under Pennsylvania law, "[t]he use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person." <u>Id.</u> at 345 (citing 18 Pa. Cons. Stat. § 505(a)).  "When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." <u>Id.</u> (citations omitted). "While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense." <u>Id.</u> (citation omitted).  Bossons maintains that, because the only witnesses to the events of January 11, 2014 were himself and Janos, "the issue becomes one of credibility of the Petitioner and his version of events or the victims." (Bossons's Br. at 9.)  Bossons asserts that, if he had testified at trial, he would have stated that "the victim was the initial aggressor and was attempting to rob Petitioner of the drugs he had on him.  After the victim broke a bottle over Petitioner's head then and only then did he respond to the attack with the only means he had available to defend himself, a small pocket knife." (<u>Id.</u>)  Bossons argues that, under these circumstances, his trial counsel's failure to present a claim of self-defense "was not a reasonable, strategic choice and prejudiced [him] and the failure to pursue self-defense was ineffective assistance." (<u>Id.</u> (citations omitted).) Bossons also relies on <u>Rolan v. Vaughn</u>, 445 F.3d 671 (3d Cir. 2006), in which the United States Court of Appeals for the Third Circuit concluded that defense counsel's "decision not to present the defense cannot be accord[ed] the normal deference to strategic choices because it was uninformed." <u>Id.</u> at 682 (citing <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997)).

The PCRA court denied this claim based on Pennsylvania state law, which provides that a self-defense claim requires the establishment of the following elements:

> "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat."

Commonwealth v. Mouzon, 53 A.3d 738, 740 (Pa. 2012) (alterations in original) (quoting Commonwealth v. Samuel, 590 A.2d 1245, 1247-48 (Pa. 1991) (citing Commonwealth v. Harris, 703 A.2d 441, 449 (Pa. 1997); 18 Pa. Cons. Stat. § 505). Bossons testified at the PCRA hearing that, on January 11, 2014, Janos threatened him, but that he did not see Janos with a knife or a gun. (N.T. 4/20/18 at 83.) Bossons further testified that Janos is about twice his age. (Id. at 83.) The PCRA court concluded, based on that testimony, that Bossons could not establish the elements of a self-defense claim and thus could not have raised a self-defense claim at trial, because his "testimony at the PCRA hearing failed to establish that he believed he was in imminent danger of death or serious bodily injury such that the use of deadly force was necessitated." PCRA Ct. Op. at 20 (citation omitted). The Superior Court concluded that Bossons's "counsel was not ineffective in failing to pursue a self-defense theory." Super. Ct. Op. at 5 n.8.

We cannot review the decision of a state court on a question of state law. See Bradshaw, 546 U.S. at 76 (citing Estelle, 502 U.S. at 6-68). Thus, we conclude that Bossons's trial counsel was not ineffective in failing to raise a self-defense claim at trial, since such a claim would not have been successful, and counsel cannot be found to be ineffective for failing to pursue a meritless claim. See Bui, 795 F.3d at 366-67.

The PCRA court also found that Bossons's decision not to testify at trial was made knowingly and intelligently after consulting with his attorney. PCRA Ct. Op. at 21. Bossons testified during his PCRA hearing that he discussed whether he should testify with his attorney several times before and during the trial and that his attorney advised him not to testify. (N.T.

4/20/2018 at 81-82.)  While Bossons argues that his attorney was ineffective for giving him this advice, Bossons admitted during his PCRA hearing that he knew that it was his decision whether or not to testify and that he ultimately made the decision not to testify.  (Id. at 82.)  In addition, Bossons was colloquied on the record during the trial regarding his decision not to testify.  During that colloquy, Bossons stated under oath that he understood that he had the right to take the stand and testify and that he understood that he had the right to remain silent and that the jury could not hold that decision against him.  (N.T. 12/4/2014 at 44.)  Bossons also stated, under oath, that he "chose[] to exercise [his] right not to testify" and that he was "okay with that decision."  (Id.) Based on this testimony, the PCRA court concluded that Bossons "ha[d] failed to establish that the decision not to testify was not his own."  PCRA Ct. Op. at 22.  The PCRA court further determined that Bossons's trial counsel did not act unreasonably in advising Bossons not to testify because, if Bossons had testified at trial, his past criminal convictions for robbery and receiving stolen property could have been admitted into evidence.  Id. at 22-23.  The PCRA court denied Bossons's claim that his attorney was ineffective for advising him not to testify.  Id. at 23.  The Superior Court concluded on appeal that "counsel was not ineffective for failing to advise Appellant to testify."  Super. Ct. Op. at 5.

　　"'It is well established that the right of a defendant to testify on his or her behalf at his or her own criminal trial is rooted in the Constitution.'"  United States v. Smith, 235 F. Supp. 2d 418, 424 (E.D. Pa. 2002) (quoting United States v. Pennycooke, 65 F.3d 9, 10 (3d Cir. 1995)). "'The right is personal and can be waived only by the defendant, not defense counsel.'"  Id. (quoting United States v. Leggett, 162 F.3d 237, 245 (3d Cir.1998)).   "Although it is the duty of defense counsel to inform defendant of his right to testify, the decision itself is ultimately that of the defendant."  Id. (citing Pennycooke, 65 F.3d 12; Jones v. Barnes, 463 U.S. 745, 751 (1983)).

"Where a defendant is aware of and understands his right to testify . . . counsel's alleged failure to call the defendant to the stand does not constitute ineffective assistance of counsel." Id. at 424-25 (citing United States v. Castillo, 14 F.3d 802, 804-05 (2d Cir. 1994); United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992); United States v. Aguirre, 912 F.2d 555, 562-63 (2d Cir. 1990)).

It is clear that Bossons was aware of and understood his right to testify on his own behalf at trial. (See N.T. 12/4/14 at 44; N.T. 4/20/18 at 82.) There is also evidence that trial counsel had concerns that Bossons's prior convictions for robbery and receiving stolen property could have been admitted into evidence if he testified at trial. (N.T. 4/20/2018 at 25.) Under these circumstances, we cannot find that trial counsel's advice to Bossons that he should not testify was unreasonable. We conclude that Bossons has not shown that his trial counsel was unreasonable in advising him not to testify at trial and, thus, that Bossons has not established that his attorney was constitutionally ineffective in this regard. See Strickland, 466 U.S. at 687-88. We therefore overrule Bossons's objection to Magistrate Judge Rice's Report and Recommendation that we deny his claim that his attorney was ineffective in failing to pursue a claim of self-defense and in advising him not to testify at trial.

E.     Juror Number 21

Bossons argues that his trial counsel was ineffective for failing to move to excuse juror number 21 ("Juror 21") for cause because that juror had shown "moderate bias" during voir dire. (Bossons's Br. at 10.) Magistrate Judge Rice recommends that we deny the Petition with respect to this claim because it is meritless. (R&R at 12.) Bossons objects to this recommendation, so we review it de novo. See 28 U.S.C. § 636(b)(1).

Bossons relies on Hughes v. United States, 258 F.3d 453 (6th Cir. 2001), in which the United States Court of Appeals for the Sixth Circuit considered whether a petitioner had

established that his attorney was ineffective in failing to move to strike a juror for cause after that juror indicated that she did not think she could be fair because her nephew was a police officer and she knew some detectives.  Id. at 456-57.  The Sixth Circuit noted in Hughes that "Counsel is . . . accorded particular deference when conducting *voir dire*. An attorney's actions during *voir dire* are considered to be matters of trial strategy."  Id. at 457 (citing Nguyen v. Reynolds, 131 F.3d 1340, 1349 (10th Cir. 1997)).  The Hughes Court also noted that "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."  Id. (citing Nguyen, 131 F.3d at 1349).  Thus, "'[t]o maintain a claim that a biased juror prejudiced him . . . [Petitioner] must show that the juror was actually biased against him.'"  Id. at 458 (second alteration in original) (quoting Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir. 1995)).  Consequently, "[a] juror's express doubt as to her own impartiality on voir dire does not necessarily entail a finding of actual bias."  Id.  Nonetheless, the Sixth Circuit found, in Hughes, that the juror's statement "that 'I don't think I could be fair,' based on her personal relationships with a police officer and police detectives, constituted an express admission of bias."  Id. at 460.  Neither the defendant's attorney nor the trial court had questioned the juror about this statement.  Id.  The Sixth Circuit concluded that "with no subsequent assurance of impartiality and no rehabilitation by counsel or the court by way of clarification through follow-up questions directed to the potential juror, we find [the juror] to have been actually biased in this case."  Id.  The Sixth Circuit further concluded that trial counsel's performance was "objectively unreasonable under Strickland, and that impaneling a biased juror prejudiced Petitioner."  Id. at 464.

Bossons argues that his trial counsel was ineffective for not challenging Juror 21 for cause because Juror 21 stated in voir dire that she believed that she might not be able to be fair and

impartial because her brother-in-law is a police officer.  (N.T. 12/1/14 (Jury Selection) at 25).

When the district attorney asked her if that meant she "couldn't sit in this matter" Juror 21

responded "I don't know.  It might be hard."  (Id.)  She also stated during voir dire that she

"vaguely" knew one of the police officers who were expected to testify at Bossons's trial, although,

when the trial court asked if there was "anything about [her] relationship with [that] individual

[that would] cause [her] to be unable to be fair and impartial in this case" she responded "No."

(Id. at 26-27.)  Juror 21 also said that she was more likely to believe the testimony of a police

officer than someone else because "I trust police officers.  I pretty much think that they're telling

the truth when they're testifying under oath."  (Id. at 77.)  When she was questioned by Bossons's

trial counsel, she stated that she would believe the testimony of a police officer "[i]f they're under

oath to tell the truth."  (Id.)  However, when the trial court asked her "If I instructed you that you

had to judge credibility of police officers using the same standard you would of a non police officer

would you be able to follow that instruction?" she replied "Yes."  (Id. at 77-78.)  Juror 21 was

seated on the jury.  (Id. at 97.)

The PCRA court denied this claim based on Juror 21's answers to the trial court's questions

during voir dire.   The PCRA court noted that, when Juror 21 was questioned about her

acquaintance with the police officer witness, she stated "her belief that she could be fair and

impartial at trial despite her knowledge of [that police officer].  PCRA Ct. Op. at 24 (citation

omitted).  The PCRA court also reviewed Juror 21's statements regarding her brother-in-law and

her statement that she thought that police officers testifying under oath would tell the truth.  Id. at

25-26.  The PCRA court denied Bossons's claim that his counsel was ineffective for failing to

challenge Juror 21 for cause based on Juror 21's statements that she would be able to be fair and

impartial and would follow the instructions of the court and "assess the credibility of a police

officer by the same standard that she would assess any other witness." Id. at 26 (citations omitted).
The Superior Court denied Bossons's appeal with regard to this claim because "counsel was not
ineffective for failing to strike Juror 21 for cause." Super Ct. Op. at 5 n.8.

"The Sixth Amendment guarantees every criminal defendant 'the right to a . . . trial[ ] by
an impartial jury.'" United States v. Meehan, 741 F. App'x 864, 871 (3d Cir. 2018) (alterations in
original) (quoting U.S. Const. amend. VI). "Juror examination through voir dire 'serves to protect
the right to an impartial jury by providing the parties a means of uncovering juror bias,' and ensures
that criminal defendants receive a determination of their guilt or innocence 'based solely upon
[the] evidence.'" Id. (quoting first United States v. Mitchell, 690 F.3d 137, 141 (3d Cir. 2012);
and then United States v. Lloyd, 269 F.3d 228, 237 (3d Cir. 2001)). A petitioner cannot "'rebut
the presumption of a prospective juror's impartiality,'" by simply "point[ing] to 'the mere
existence of any preconceived notion as to the guilt or innocence of the accused.'" Id. (quoting
Irvin v. Dowd, 366 U.S. 717, 723 (1961). Instead, "a juror is deemed impartial so long as he 'can
lay aside his impression or opinion and render a verdict based on the evidence presented in court.'"
Id. at 871-72 (quoting Irvin, 366 U.S. at 723). Consequently, "a juror's expression of doubt about
his own impartiality [does not] necessarily lead[] to a finding of actual bias." Id. (citing Hughes,
258 F.3d at 458). As the Third Circuit has noted, "the Supreme Court has upheld the impaneling
of jurors who, during voir dire, expressed doubts, or even disclaimed outright, their ability to be
impartial." Id. (citing Patton v. Yount, 467 U.S. 1025, 1032 (1984); Murphy v. Florida, 421 U.S.
794, 803 (1975)).

In this case, Juror 21 expressed doubt that she could be impartial and also expressed bias
in favor of police officer witnesses. She was also acquainted with one of the police officer
witnesses. Merely being acquainted with a potential government witness is insufficient, in itself,

to establish bias on the part of a juror.  See United States v. Mitchell, 690 F.3d 137, 149 (3d Cir.

2012) (declining to find that a juror's employment by the police department and acquaintance with

a police officer who testified against the defendant at trial was sufficient "for legal attribution of

bias" (citations omitted)).  Moreover, the trial court questioned Juror 21 about her apparent bias in

favor of police officer witnesses, asking her whether she could "judge [the] credibility of police

officers using the same standard [she] would of a non police officer" if instructed to do so, and she

responded that she would be able to do so.  (N.T. 12/1/14 (Jury Selection) at 77-78.)  Thus, Juror

21 is deemed impartial.  See Meehan, 741 F. App'x at 871-72 (quotation omitted).

We thus conclude that the state courts' adjudication of this claim did not "result[] in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law" and that their decisions were not "based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

Accordingly, we overrule Bossons's objection to Magistrate Judge Rice's Report and

Recommendation that we deny this claim.

## IV.    CONCLUSION

For the foregoing reasons, we overrule each of Bossons's objections and adopt Magistrate

Judge Rice's Report and Recommendation in its entirety, as discussed herein.  In addition, as

Bossons has failed to make a substantial showing of the denial of a constitutional right or

demonstrate that a reasonable jurist would debate the correctness of this ruling, we decline to issue

a certificate of appealability under 28 U.S.C. § 2253(c)(2).  An appropriate Order follows.

BY THE COURT:


/s/ John R. Padova
_____
John R. Padova, J.